UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

NARDELLA CHONG, P.A.,

    Plaintiff,

v.                          CASE NO: 8:08-cv-1239-T-33EAJ

MEDMARC CASUALTY INSURANCE
COMPANY,

    Defendant.
_____/

**ORDER**

This cause comes before the Court pursuant to Defendant's Motion for Summary Judgment (Doc. # 29), Plaintiff's Motion for Final Summary Judgment (Doc. # 31), and the respective responses thereto.

I.    BACKGROUND

Plaintiff was a professional association of attorneys who were licensed to and practiced law in the State of Florida. Defendant issued a Lawyers' Professional Liability Policy to Plaintiff that was in effect for the policy period January 30, 2007 to January 30, 2008.

In April 2007, Plaintiff was contacted via a series of e-mails by a Mr. Liu Chang, who represented himself to be the president of Northlink Industrial Limited ("Northlink"). At Mr. Chang's request, Plaintiff accepted the representation of

Northlink as a client of the firm. In the same month, Plaintiff received a cashier's check purporting to be on behalf of Northlink in the amount of $197,350.00. Plaintiff deposited the cashier's check into the firm's trust account where it was held together with trust funds belonging to other clients of the firm.

Plaintiff subsequently received instructions from Mr. Chang to make wire transfers of portions of the cashier's check to what Northlink represented were two of its suppliers. Plaintiff wired the funds as requested. The cashier's check had not yet cleared at the time of the wire transfer, and the check was later found to be counterfeit.

Because Plaintiff's trust account also contained funds from other clients, the bank honored the wire transfer requests even though the cashier's check had not cleared. As a result, other clients' funds were utilized to fund the Northlink wire transfers in the amount of $180,079.00. Plaintiff immediately notified Defendant and made a claim under the policy. Plaintiff requested permission from Defendant to restore the money wired from its trust account. Defendant responded that Plaintiff could restore the money, that it was not necessary to receive demands from each client who had money in the trust account, nor obtain Defendant's

written consent, and that this conduct would not prejudice Plaintiff's rights under its policy with Defendant. Plaintiff replenished the trust account funds that were applied to fund the counterfeit cashier's check wire transfers with its own money and made its clients' interest in the trust account whole.

Plaintiff is now seeking coverage from Defendant under its professional liability policy for client funds lost from Plaintiff's trust account as the result of Northlink's fraud. Defendant asserts that coverage under the policy has not been triggered under the undisputed facts and circumstances of this case. Specifically, Defendant argues that Plaintiff is seeking reimbursement of sums defrauded from the firm through the use of the counterfeit cashier's check and wire transfers and that there are no damages for any claim against the firm arising from acts or omissions in professional services rendered, or which should have been rendered, by the law firm, as those terms are defined in the policy.

II. <u>STANDARD OF REVIEW</u>

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving

party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). A factual dispute alone is not enough to defeat a properly pled motion for summary judgment; only the existence of a genuine issue of material fact will preclude a grant of summary judgment. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48 (1986).

An issue is genuine if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. Mize v. Jefferson City Bd. of Educ., 93 F.3d 739, 742 (11th Cir. 1996) (citing Hairston v. Gainesville Sun Publ'g Co., 9 F.3d 913, 918 (11th Cir. 1993)). A fact is material if it may affect the outcome of the suit under the governing law. Allen v. Tyson Foods, Inc., 121 F.3d 642, 646 (11th Cir. 1997). The moving party bears the initial burden of showing the court, by reference to materials on file, that there are no genuine issues of material fact that should be decided at trial. Hickson Corp. v. N. Crossarm Co., 357 F.3d 1256, 1260 (11th Cir. 2004) (citing Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986)). "When a moving party has discharged its burden, the non-moving party must then 'go beyond the pleadings,' and by its own affidavits, or by 'depositions, answers to interrogatories, and admissions on file,' designate specific facts showing that there is a genuine issue for

4

trial." <u>Jeffery v. Sarasota White Sox, Inc.</u>, 64 F.3d 590, 593-94 (11th Cir. 1995) (citing <u>Celotex</u>, 477 U.S. at 324).

If there is a conflict between the parties' allegations or evidence, the non-moving party's evidence is presumed to be true and all reasonable inferences must be drawn in the non-moving party's favor. <u>Shotz v. City of Plantation, Fla.</u>, 344 F.3d 1161, 1164 (11th Cir. 2003). If a reasonable fact finder evaluating the evidence could draw more than one inference from the facts, and if that inference introduces a genuine issue of material fact, the court should not grant summary judgment. <u>Samples ex rel. Samples v. City of Atlanta</u>, 846 F.2d 1328, 1330 (11th Cir. 1988) (citing <u>Augusta Iron & Steel Works, Inc. v. Employers Ins. of Wausau</u>, 835 F.2d 855, 856 (11th Cir. 1988)). However, if the non-movant's response consists of nothing "more than a repetition of his conclusional allegations," summary judgment is not only proper, but required. <u>Morris v. Ross</u>, 663 F.2d 1032, 1034 (11th Cir. 1981).

Summary judgment is appropriate in an action seeking a declaration of coverage, when the insurer's duty, if any, rests solely on the applicability of the insurance policy, the construction and effect of which is a matter of law. <u>Northland Cas. Co. v. HBE Corp.</u>, 160 F. Supp. 2d 1348, 1357-58

(N.D. Fla. 2001). When the jurisdiction of the court is based on diversity of citizenship and the policy was issued in Florida, as is the case here, the district court must look to the substantive law in Florida for guidance in interpreting the policy.[1] <u>Lazzara Oil Co. v. Columbia Cas. Co.</u>, 683 F. Supp. 777, 779 (N.D. Fla. 1988).

III. <u>ANALYSIS</u>

The Lawyers' Professional Liability Policy requires Defendant to pay on behalf of the insureds, all sums the insureds are legally obligated to pay as "damages" resulting from an act or omission in the performance or failure to perform "professional services." Defendant argues that Plaintiff is simply seeking restitution or recoupment of its money paid to cover that portion of money wrongfully transferred as part of the fraud committed against the firm by Liu Chang. Plaintiff contends that, under the terms of the policy, coverage is afforded to Plaintiff for negligence claims resulting from the performance of, or failure to

---

[1] While the Court recognizes that it must look to the substantive law in Florida for guidance in interpreting the policy, the Court notes that the parties' motions and responses lack in citation to meaningful Florida substantive law as the facts of this case present a highly unusual set of circumstances. Accordingly, this Court is left to consider case law from other jurisdictions.

perform, professional services.

The parties agree that under Florida law, an insurance contract should be construed according to the "plain language" of the insurance contract. <u>Auto-Owners Ins. Co. v. Anderson</u>, 756 So. 2d 29, 34 (Fla. 2000). "If the relevant policy language is susceptible to more than one reasonable interpretation, one providing coverage and another limiting coverage, the insurance policy is considered ambiguous." <u>Id.</u> Policy provisions that are ambiguous must be "interpreted liberally in favor of the insured and strictly against the drafter who prepared the policy." <u>Id.</u> The Court, however, does not find the policy provisions ambiguous. The relevant provisions of the policy are:

SECTION I: INSURING AGREEMENT

A. <u>Professional Liability "Claims" Made and Reported Insuring Clause</u>

The Company shall pay on behalf of the "Insured" all sums, in excess of the Deductible, that the "Insured" shall become legally obligated to pay as "Damages" because of a "Claim" resulting from an act or omission in the performance of, or failure to perform, "Professional Services", but only if such "Claim" is 1) first made against the "Insured" during the "Policy Period" or an Extended Reporting Period; and 2) reported in writing to the Company during the "Policy Period" or an Extended Reporting Period . . . .

***

7

SECTION II: DEFINITIONS

Whenever used in this Policy, the term: ...

B.     "Claim" means a demand for money or services made against any "Insured" ... alleging negligent acts or negligent omissions, ... resulting from the performance of or failure to perform "Professional Services" by any "Insured."...

D.     "Damages" means any compensatory monetary judgment or award, or any settlement consented to by the Company...

                              ***

L.     "Professional Services" means:

     1.     Services performed by an "Insured" for others as an attorney...

     3.     Services as an administrator, conservator, receiver, executor, guardian, trustee, committee of an incompetent person, or services performed in any similar fiduciary capacity, but only for those services typically and customarily performed by and attorney....

Plaintiff cites to <u>Green v. Bartel</u>, 365 So. 2d 785 (Fla. 2d DCA 1978), in support of its contention that an attorney's error in disbursing trust funds constitutes a professional malpractice claim under Florida law. The facts of the <u>Green</u> case, however, are distinguishable from the facts of the instant case.

In <u>Green</u>, the attorneys endorsed their client's name on two settlement drafts without their client's knowledge or

permission and deposited the drafts into their trust account. Id. at 786. The attorneys then disbursed their client's settlement funds to a third-party without their client's authorization. Id. at 787. The client never received the settlement proceeds and sued the attorneys for negligence, breach of contract and breach of fiduciary relation. Id. In deciding whether the action was barred by a two-year statute of limitations, the court discussed briefly that if the attorneys still held the money in trust, the action against them would proceed in assumpsit or by suit for accounting, but because the attorneys disbursed the money to another party, the action was one in malpractice for an alleged wrongful act of the attorneys. Id. at 787-88.

The facts of the case at bar, in contrast, do not include an intentional act by Plaintiff in which its clients' money was wrongfully disbursed to another party. On the contrary, Plaintiff disbursed Northlink's money as directed by Northlink. As a result of the fraud perpetrated by Northlink, there was no money to cover the wire transfers, and the bank used the other money available in the trust account. Although Plaintiff argues that the end result is the same as in Green, i.e., clients' funds have been disbursed to an improper third party, and therefore should also be construed as malpractice,

the distinction lies in the actions that caused the undesirable result. Had the cashier's check not been counterfeit, the end result would not have occurred. Had the Plaintiff waited longer to direct the wire transfers,[2] the fraud would have been discovered prior to the transfers, and the end result would not have occurred. Neither of these scenarios involve a negligent act or a negligent omission on the part of Plaintiff but instead involve misfortune and bad luck. Unfortunately, Plaintiff was a victim of fraud, but the professional liability policy provided by Defendant was not intended to cover such a loss by Plaintiff. Accordingly, the Court finds no coverage under the policy because there have been no negligent acts or negligent omissions resulting from the performance of, or failure to perform, professional services.

Similarly, the Court finds that the facts of this case are analogous to the cases cited by Defendant in support of its argument that Plaintiff's clients' potential claims herein

---

[2]The Court notes that because the funds received by the Plaintiff from Northlink were in the form of a cashier's check and not a regular bank draft (which might more obviously require time to clear before the funds could be considered available), it is not necessary to consider, and Plaintiff does not argue, whether Plaintiff acted negligently in not waiting for verification that the cashier's check was not counterfeit.

would more properly be characterized as restitutionary in nature rather than compensatory and thereby would not constitute "damages" under the policy. See Jaffe v. Cranford Ins. Co., 168 Cal. App. 3d 930, 935 (Cal. 4th DCA 1985); Republic Western Ins. Co. v. Spierer, Woodward, Willens, Denis & Furstman, 68 F.3d 347, 351-52 (9th Cir. 1995); Level 3 Communications, Inc. v. Federal Ins. Co., 272 F.3d 908, 911 (7th Cir. 2001); New Life Brokerage Serv., Inc. v. Cal-Surance Associates, Inc., 334 F.3d 112 (1st Cir. 2003). Plaintiff's clients' rights to their money being held in Plaintiff's trust account were not altered by the fraud perpetrated on Plaintiff and the erroneous transfer of the trust account funds. Any suit to recover these funds would have been more restitutionary in nature, and recovery of these funds would not be characterized as compensatory damages stemming from an act or omission of Plaintiff. In other words, Plaintiff's clients' rights to their money was not contingent on an act or omission on the part of Plaintiff in rendering professional services. Accordingly, for this additional reason, the Court finds no coverage under the policy.[3]

---

[3]The Court is not persuaded by Defendant's arguments regarding a lack of attorney-client privilege between Plaintiff and Northlink or a lack of professional services being rendered to Northlink and need not address those

Accordingly, it is

**ORDERED, ADJUDGED,** and **DECREED:**

(1) Defendant's Motion for Summary Judgment (Doc. # 29) is **GRANTED**.

(2) Plaintiff's Motion for Final Summary Judgment (Doc. # 31) is **DENIED**.

(3) The Clerk is directed to enter judgment in favor of Defendant and **CLOSE** this case.

**DONE** and **ORDERED** in Chambers in Tampa, Florida, this <u>10th</u> day of December, 2009.

VIRGINIA M. HERNANDEZ COVINGTON
UNITED STATES DISTRICT JUDGE

Copies:

All Counsel of Record

---

arguments here.